# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| JOE D'AMBROSIO, | ) Case No. 1:11 CV 933 |
| | ) |
| Plaintiff, | ) Judge Dan Aaron Polster |
| | ) |
| vs. | ) **MEMORANDUM OF OPINION** |
| | ) **AND ORDER** |
| CARMEN MARINO, et al., | ) |
| | ) |
| Defendants. | ) |

In 1988, Plaintiff Joe D'Ambrosio was convicted, along with Michael Keenan, of the aggravated murder of Estel Anthony (Tony) Klann, sentenced to death, and incarcerated on death row for nearly 21 years before being released in March 2010. Following two decades of litigation, the Sixth Circuit Court of Appeals affirmed the district court's ruling that the prosecution withheld a significant amount of exculpatory and impeachment evidence from D'Ambrosio's criminal counsel, and later affirmed the district court's ruling barring his re-prosecution. D'Ambrosio now seeks monetary compensation from two county prosecutors, the lead investigator, the county coroner, the City of Cleveland and Cuyahoga County for the years he was incarcerated as the result of his unconstitutionally procured conviction.

Presently before the Court is a Motion for Judgment on the Pleadings filed by Dr. Elizabeth Balraj and the Cuyahoga County Coroner's Office ("Motion"). (**Doc #: 38**.) Dr. Balraj is the county coroner who conducted the autopsy of Tony Klann and testified at D'Ambrosio's trial. For the following reasons, the Court **GRANTS** the Motion.

**I.**

The Second Amended Complaint alleges the following facts against Dr. Elizabeth Balraj, which facts must be taken as true for purposes of the pending Motion. *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995).

At some time between the evening of Thursday, September 22, 1988 and the morning of Saturday, September 24, 1988, Tony Klann was murdered. On Saturday afternoon, a jogger discovered Klann's body in Doan Creek, near Martin Luther King Boulevard in Cleveland, Ohio. Dr. Balraj, who conducted Klann's autopsy, determined that Klann suffered multiple stab wounds to his trunk and neck with multiple visceral perforations, and ruled Klann's death a homicide. (Doc #: 38-2, at 2.) On a trace evidence report, Dr. Balraj noted that Klann's body was received at the morgue "with T-shirt, pants & socks on - (no shoes - no undershorts)." (Doc #: 38-3, at 2.) The Cleveland Police Department detectives who first arrived on the scene (Goldstein and Hayes) concluded that Klann had been killed somewhere else and his body dumped in the creek because there was no blood or other indication of a struggle near the body, and the lack of shoes suggested that the victim had not been out walking.

Two days after the Klann's body was discovered, a man named Paul Lewis called police and, without identifying himself, asked if the victim's hands were cut – information not known to the public. He was directed to the morgue, where he identified Klann in the company of Cleveland Police Detective Leo Allen, who ultimately headed the murder investigation. Lewis later told police that he saw D'Ambrosio, Keenan, and a man named Eddie Espinoza at a bar called Coconut Joe's on Friday night, September 23, and that they were arguing with Klann. He told police that one friend (James Russell) later told him these three men stopped by Russell's

apartment armed and looking for Lewis, whom they believed had stolen their drugs; and that another friend (Adam Flanik) told him he saw D'Ambrosio in Keenan's truck in the wee hours Saturday morning with a knife to Klann's throat. The police subsequently arrested Espinoza, D'Ambrosio, and Keenan, and charged them with the aggravated murder of Tony Klann.

Espinoza confirmed Lewis' story and told police that he witnessed D'Ambrosio and Keenan kill Klann. Espinoza said that D'Ambrosio and Keenan abducted Klann, whom they found walking along the road late Friday night, in order to force him to lead them to Lewis to recover the stolen. Espinoza said that they drove to Doan Creek where Keenan slashed Klann's throat because Klann would not say where Lewis was, after which D'Ambrosio chased Klann down and stabbed him in the chest to finish him off.

D'Ambrosio was tried by a three-judge panel. The trial turned on D'Ambrosio's testimony[1] versus Espinoza's alleged eyewitness testimony. Among the witnesses who testified at D'Ambrosio's trial was Dr. Balraj, the Cuyahoga County Coroner who conducted Klann's autopsy. She testified about the findings articulated in the Coroner's Verdict. The panel believed Espinoza's version of events, convicted D'Ambrosio of Klann's murder, and sentenced him to death row where he remained for the next 20 years.

In March 2006, the district court, reviewing Plaintiff's habeas petition, issued an opinion concluding that the prosecutor violated *Brady v. Maryland*, 373 U.S. 83 (1963) by failing to disclose to Plaintiff's counsel, prior to trial, a significant amount of evidence that was favorable to Plaintiff. *D'Ambrosio v. Bagley*, No. 1:00 CV 2521, 2006 WL 1169926 (N.D. Ohio Mar. 24,

---

[1] D'Ambrosio testified that he was at Coconut Joe's on Thursday night, not Friday night; thus undercutting Espinoza's account of the murder.

2006).  Among the many pieces of withheld evidence was the trace evidence report prepared by Dr. Balraj the day she received Klann's body and performed the autopsy.  The district court explained that the report,

> when taken in conjunction with the conclusions of Hayes and Goldstein, and the witness statements discussed in subsectioni, below, would have provided the defense with powerful grounds upon which to refute Espinoza's version of events.  It is simply not logical that Klann would have been walking along Mayfield Road heading towards his home after a night of drinking in the bars, as Espinoza claimed, with neither his shoes nor his underwear.  It is meaningful, moreover, that in describing the murder, including Klann's initial attempts to flee, Espinoza did not mention that the victim was barefoot.

*D'Ambrosio*, 2006 WL 1169926, at *27.

Plaintiff now seeks to hold Dr. Balraj personally, and her office generally, liable in civil damages for committing *Brady* violations.  The Court has reviewed the Motion (Doc #: 38), the opposition brief (Doc #: 43), the reply brief (Doc #: 46) and the entire record, and is prepared to issue its ruling.

## II.

Federal Rule of Civil Procedure 12(c) provides that once the pleadings are closed, any party may move for judgment on the pleadings.  The standard for analyzing a motion for judgment on the pleadings under Rule 12(c) is the same standard applicable to motions to dismiss under Fed. R. Civ. P. 12(b)(6).  *See, e.g., Vickers v. Fairfield Med. Ctr.*, 453 757, 761 (6th Cir. 2006); *EEOC v. J.H. Routh Packing Co.*, 246 F.3d 850, 851 (6th Cir. 2001); *Theiss v. Burger King Restaurant*, No. 5:11 CV 787, 2011 WL 2971099, at *1 (N.D. Ohio Jul. 20, 2011).

A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint.  "The first step in testing the sufficiency of the complaint is to identify any conclusory allegations."  *Doe v. Simpson*, No. C-1-08-255, 2009 WL 2591682, at *1 (S.D. Ohio Aug. 19, 2009) (citing *Ashcroft*

*v. Iqbal*, 129 S.Ct. 1937, 1950 (2009)). "Threadbare recital of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 120 S.Ct. at 1949 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Although the court must accept well-pleaded factual allegations of the complaint as true for purposes of a motion to dismiss, the court is 'not bound to accept as true a legal conclusion couched as a factual allegation.' " *Simpson*, 2009 WL 2591682, at *1 (quoting *Twombly*, 550 U.S. at 555).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 550). More is required than "unadorned, the-defendant-unlawfully-harmed me accusations." *Id*. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

### III.

#### A. Individual Capacity Claim

Plaintiff seeks to recover § 1983 damages from Dr. Balraj for committing *Brady* violations in connection with his criminal case. Title 42, Section 1983 of the United States Code creates a cause of action for public officials who violate a person's constitutional rights while acting under color of law. *Gregory v. City of Louisville*, 444 F.3d 725, 738 (6th Cir. 2006) (citing 42 U.S.C. § 1983). Section 1983 itself is not a source of substantive rights; it merely provides a method for vindicating federal rights elsewhere conferred. *Moldowan v. City of Warren*, 578 F.3d 351, 376 (6th Cir. 2009) (citing *Graham v. Connor*, 490 U.S. 386, 393-94 (1989), in turn citing *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). Thus, the first inquiry in any § 1983

suit is to isolate the precise constitutional violation the defendant is alleged to have committed. *Id*. (citing *Baker v. McCollan*, 443 U.S. at 140).

The suppression of evidence favorable to an accused violates due process where the evidence is material either to guilt or punishment, or can be used to impeach adverse witnesses. *Moldowan*, 578 F.3d at 376-77 (citing *Brady*, 373 U.S. at 87, and *Giglio v. United States*, 405 U.S. 150, 154 (1972)). Plaintiff contends that Dr. Balraj committed *Brady* violations by withholding the trace evidence report, signing the official Coroner's Verdict which allegedly endorsed Espinoza's version of the facts, and tailoring her trial testimony to support the state's theory of the case.

As a preliminary matter, it is beyond dispute that all witnesses are absolutely immune from civil liability for their trial testimony in judicial proceedings – no matter how egregious or perjurious that testimony may be. *Moldowan*, 578 F.3d at 390 (citing *Briscoe v. LaHue*, 460 U.S. 325, 328 (1983), and *Spurlock v. Satterfield*, 167 F.3d 995 (6th Cir. 1999)). Thus, to the extent Plaintiff is seeking to recover § 1983 damages from Dr. Balraj based on her trial testimony, such claim is dismissed as a matter of law.

Dr. Balraj contends that she has qualified immunity from civil liability for her conduct in failing to disclose the trace evidence report and signing the verdict form. Public officials performing their official duties are protected from civil liability "insofar as their conduct does not violate clearly established constitutional rights of which a reasonable person would have known." *Vakilian v. Shaw*, 335 F.3d 509, 516 (6th Cir. 2003) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 817-18 (1982)). "The central purpose of affording public officials qualified immunity from suit is to protect them 'from undue interference with their duties and from potentially

disabling threats of liability.'" *Elder v. Holloway*, 510 U.S. 510, 514 (1994) (quoting *Harlow*, 457 U.S. at 806)); *Blake v. Wright*, 179 F.3d 1003, 1007 (6th Cir. 1999). "Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

To determine at the pleading stage whether a defendant is entitled to qualified immunity, the court must determine (1) whether the factual allegations make out the violation of a constitutional right, and (2) whether the constitutional right at issue was clearly established at the time of defendant's alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). The constitutional right must be "so clearly established at the time in question that a reasonable person in the defendant's position would have known that he was violating the plaintiff's constitutional rights." *Gregory*, 444 F.3d at 745. Once the qualified immunity defense is raised, the plaintiff bears the burden of showing that the defense does not apply. For the reasons to follow, the Court finds that Plaintiff has failed to plead sufficiently plausible facts demonstrating that Dr. Balraj violated his due process rights.

To begin, Plaintiff has not cited, and the Court cannot find, a single case holding that the duty of a prosecutor to evaluate and disclose exculpatory and impeachment evidence to criminal defendants extends to a coroner. In fact, Supreme Court and Sixth Circuit case law dictates otherwise.

By its own terms, *Brady* applies to prosecutors. *Brady*, 373 U.S. at 87-88. In *Giglio*, the Supreme Court reiterated that *Brady's* disclosure obligation was the "responsibility of the prosecutor." *Giglio*, 405 U.S. at 154. In *Kyles v. Whitley*, 514 U.S. 419 (1995), the Supreme

Court held that the *Brady* disclosure obligation extends to exculpatory evidence known only to police officers, but that the responsibility for obtaining and disclosing such evidence remains the duty of the prosecutor. *Kyles*, 514 U.S. at 437-38. In *Harris v. Lafler*, 553 F.3d 1028 (6th Cir. 2009), the Sixth Circuit stated that *Brady* "applies to relevant evidence in the hands of the police, whether the prosecutors knew about it or not, whether they suppressed it intentionally or not, and whether the accused asked for it or not." *Harris*, 553 F.3d at 1033 (quoting *Strickler v. Greene*, 527 U.S. 263, 280-81 (1999)). In *Lindsay v. Bogle*, 92 Fed. Appx. 165 (6th Cir. 2004), the Sixth Circuit concluded that a police chief's refusal to give an arrestee his internal investigation file did not violate *Brady*, even if it contained exculpatory material, because *Brady* applies only to prosecutors. *Lindsay*, 92 Fed. Appx. at 170. Thus, the Court concludes that the duty of prosecutors to disclose exculpatory or impeachment evidence to criminal defendants does not extend to coroners.

Plaintiff cites *Moldowan* for the proposition that the coroner has the same *Brady* obligation as prosecutors to disclose exculpatory and/or impeachment evidence. There, in a split decision, the Sixth Circuit held in 2009 that a police officer, who intentionally suppressed exculpatory evidence upon which the underlying criminal case turned, had a "concomitant or derivative duty" under *Brady* to turn that evidence over <u>to the prosecutor</u>. *See Moldowan*, 578 F.3d at 376-382 (emphasis added). Even then, because police officers are not lawyers, the court held that the exculpatory value of the evidence must be "apparent" to the officers – as opposed to "potentially useful to the defense." *Id*. at 388 (citing *California v. Trombetta*, 467 U.S. 479, 489 (1984)).

Additionally, the *Moldowan* court extended this *Brady*-derivative obligation to include a state-retained forensics consultant who intentionally fabricated evidence and simultaneously withheld patently exculpatory evidence from the county prosecutor. In extending this derivative obligation to a forensic examiner, the court relied on two other cases where police or forensic examiners intentionally fabricated evidence. *See Moldowan*, 578 F.3d at 397 (citing *Gregory*, 444 F.3d 725 (a forensics examiner who intentionally fabricated findings in a forensics report) and *Spurlock*, 167 F.3d 995 (an officer who fabricated probable cause, coerced informant into testifying falsely and paid him for doing so)). The cases following *Moldowan* have confined this derivative *Brady* obligation to police officers or state-retained experts who fabricate evidence. *See, e.g., Army v. Collins*, No. 11-1791, 2012 WL 2913736, (6th Cir. Jul 18, 2012) (police officers); *Sykes v. Anderson*, 625 F.3d 294 (6th Cir. 2010) (police officer); *Rodriguez v. City of Cleveland*, 439 Fed. Appx. 433 (6th Cir. 2011).

*Moldowan* was decided 21 years after Dr. Balraj's autopsy. Even that case does not extend *Brady* to a coroner. In 1988, there was no constitutional duty, let alone a firmly established one, for a police officer, let alone a coroner, to evaluate and disclose exculpatory and/or impeachment evidence to criminal defendants or prosecutors.

Plaintiff contends that Dr. Balraj violated her derivative *Brady* obligation by unlawfully withholding from the prosecution the trace evidence report. The trace evidence report contained the following notation near the top of the first of four pages:

Body received with T-shirt, pants & socks on – (no shoes - no undershorts)

(Doc #: 43-3, at 2.) According to the habeas court,

> this evidence when taken in conjunction with the conclusions of Hayes and Goldstein, and the witness statements discussed in subsectioni, below, would

-9-

>have provided the defense with powerful grounds upon which to refute Espinoza's version of events.

*D'Ambrosio*, 2006 WL 1169926, at *27 (emphasis added). A review of the district and appellate court rulings shows that the trace evidence report was among thirteen (13) pieces of potentially exculpatory evidence the courts concluded the prosecution unlawfully failed to disclose to Plaintiff. *See D'Ambrosio*, 527 F.3d at 493-94. Notwithstanding the rulings, the argument that Dr. Balraj is liable in civil damages for violating a *Brady*-derivative obligation by withholding the report from the prosecutor lacks merit.

First, as explained above, Plaintiff fails to cite a single case supporting the proposition that, in 1988, a coroner had a constitutional duty, let alone a firmly established one, to appreciate and disclose exculpatory evidence to the prosecutor or the defendant.

Second, Plaintiff has not alleged any facts supporting the contention that Dr. Balraj withheld this report from the prosecutor, or that the prosecutor asked her for exculpatory or impeachment evidence and she intentionally withheld it.

Third, there is no reason whatsoever for Dr. Balraj to think that this piece of evidence, standing alone, had any exculpatory or impeachment value – or that the exculpatory or impeachment value of this evidence was <u>apparent</u> to her when she examined Klann's body. This argument utterly misconstrues Dr. Balraj's official duties.

As Plaintiff acknowledges, the fundamental statutory duty of a coroner is to hold on to dead bodies only as long as it takes to enable the coroner to decide on a "diagnosis giving a reasonable and true cause of death." (See Doc #: 43, at 10-11 (citing O.R.C. § 313.15).)

> [T]he cause of death is generally understood to be the medical reason for death – as, for example, loss of blood resulting from a wound to the heart; . . . the mode of death is generally understood to be the type of instrument of injury involved – as, for example, a gunshot wound; and . . . the manner of death is generally understood to be the style in which the event occurred – as, for example, a suicide, homicide, or accident.

1988 Ohio Ap. Atty Gen. 88-035, at 2-163 (citation omitted). The coroner is concerned with the physical and medical causes of death, while law enforcement is concerned with whether or not another person unlawfully caused the death. Id. (citation omitted). Though there are times when the investigative duties of the coroner and law enforcement overlap, the coroner, as a physician, is <u>not</u> qualified to make legal determinations. Id. (citation omitted). In short, while the coroner has broad investigative authority to determine the medical cause of unexplained deaths, "neither the coroner nor [her] staff may go beyond the investigative tasks necessary to determine the manner, mode and cause of death . . .." Id. at 2-155 (syllabus).

The trace evidence report is a document that was prepared by Dr. Balraj and others when they received Klann's body on September 25, 1988. Noone had been charged with Klann's murder at that time, and Dr. Balraj was not involved in determining who killed Klann.

Fourth, the Sixth Circuit has only denied qualified immunity to non-prosecutors who intentionally fabricated evidence upon which they later testified at trial. *Moldowan*, 578 F.3d 351; *Gregory*, 444 F.3d 725; *Spurlock*, 167 F.3d 995. Here, there is no allegation that Dr. Balraj fabricated the information on the trace evidence report. In fact, the opposite is the case. Plaintiff argues that this information, had it been disclosed, would have helped him impeach Espinoza's account of the murder.

Since there is no allegation that Dr. Balraj withheld the trace evidence report from the prosecutor, no allegation that the report was exculpatory at the time Dr. Balraj prepared it, and

-11-

no allegation that Dr. Balraj fabricated the information in the report, Plaintiff fails to state a *Brady*-derivative due process claim against Dr. Balraj for allegedly withholding the report from the prosecutor.

Equally unavailing is Plaintiff's contention that Dr. Balraj's signing of the Coroner's Verdict violated *Brady*, or that in signing it, she knowingly endorsed Espinoza's version of events.  No one can seriously argue that Dr. Balraj withheld the Coroner's Verdict from anyone since she testified about the findings in her Verdict at Plaintiff's trial.  Furthermore, since Dr. Balraj conducted Klann's autopsy within 48 hours of receiving his body, it would have been impossible for her to anticipate Espinoza's version of events or the state's eventual theory of the case.  Once Dr. Balraj determined the medical cause of Klann's death, any investigatory authority she had concluded since she had no authority, and was not qualified, to make any legal determinations.  Finally, and most important, Dr. Balraj concluded in the Coroner's Verdict that Klann died of multiple knife wounds to the torso and neck, and that his death was the result of a homicide.  Despite the lapse of 20 years, this diagnosis has never been contested.

Finally, Plaintiff asks the Court to keep Dr. Balraj in the case to see if discovery reveals some evidence against her:

> As indicated by the complicated back history of this case, and the documented, judicially established pattern of malfeasance and bad faith by the Cuyahoga County Prosecutor's Office, the facts as to who did what to which evidence remain clouded.  Judgment on the pleadings is inappropriate because the pleadings at this stage of such a complex and important case cannot resolve the issues themselves.  This case calls for an adversary procedure to ferret out the truth, not a premature dismissal that further occludes it.

(Doc #: 43, at 4 (emphasis added).)  In *Iqbal*, the Supreme Court made clear that to state a claim, the plaintiff must show more than a "sheer possibility" that a defendant has acted unlawfully.

556 U.S. at 678-79. In addition, the Supreme Court held that federal courts should be particularly reluctant to relax pleading requirements in cases such as this, where the purpose of the qualified immunity doctrine is to free officials from the concerns of litigation, including the avoidance of disruptive discovery. *Id*. at 685 (citing *Siegert v. Gilley*, 500 U.S. 226, 236 (1991)).

For all these reasons, the Court **GRANTS** the motion to dismiss the § 1983 claim against Dr. Balraj in her individual capacity.

### B. Official Capacity Claim

Plaintiff brings his *Brady* claim against Dr. Balraj in her official capacity. Courts construe claims against public officials in their official capacities as claims against the political subdivision; here, Cuyahoga County. *Lane v. City of LaFollette, Tenn*., 490 F.3d 410, 422 (6th Cir. 2007) (citations omitted). Plaintiff asserts that, as a policymaker on behalf of Cuyahoga County, Dr. Balraj's alleged *Brady*-based due process violations constituted a policy, custom or practice of Cuyahoga County, giving rise to a *Monell* claim.

In *Monell v. Department of Soc. Servs.*, 436 U.S. 658 (1978), the Supreme Court held that a municipality may be held liable under § 1983 for the unconstitutional acts of its employees if either a municipality's official policy or one of its customs is the source of the injury. *Id*. at 694. In order to demonstrate *Monell* liability, a plaintiff must show that the official policy in question is the moving force behind the constitutional violation. *City of Canton v. Harris*, 489 U.S. 378 , 389 (1989) (citing *Monell*, 436 U.S. at 694). Thus, unless an official policy maker is involved in an underlying constitutional violation, the existence of an unconstitutional policy or custom cannot be demonstrated by the occurrence of a constitutional violation alone. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985).

This claim fails, in the first instance, because the Plaintiff has failed to allege an underlying constitutional violation against Dr. Balraj in her individual capacity. In any event, the Sixth Circuit has previously found that a county coroner is not vested with any policymaking authority with regard to determining and reporting the causes of death. *Jorg v. City of Cincinnati*, 145 Fed. Appx. 143, 147 (6th Cir. 2005).

### IV.

Based on the foregoing, the Court **GRANTS** the motion to dismiss the *Brady*-based due process claim against Dr. Balraj in her individual and official capacities.

**IT IS SO ORDERED.**

*/s/ Dan A. Polster     October 1, 2012*
**Dan Aaron Polster**
**United States District Judge**